UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LARRY FELTON WHITE, JR,

 Plaintiff,

v.            Case No. 3:20cv3582-MCR-HTC

WARDEN C MAIORANA,
CHIEF OF SECURITY KRAIG CARTER,
SERGEANT D MILLER,
CORRECTION OFFICER T HUDSON,
CORRECTION OFFICER SLAWSON, and
GEO GROUP INC,

 Defendants.
_____/

## REPORT AND RECOMMENDATION

 This matter is before the Court on the motion to dismiss filed by Defendants GEO Group, Hudson, Maiorana, Miller, and Slawson, ECF Doc. 13, which was joined in and adopted by Defendant Carter in ECF Doc. 20. Plaintiff responded to the motions to dismiss on August 3, 2020. ECF Doc. 24. Upon consideration of the motions, Plaintiff's response, and the complaint, the undersigned respectfully recommends that Defendants' motions be GRANTED for failure to exhaust.

I.  **BACKGROUND**

Plaintiff, Larry Felton White, Jr., is an inmate of the Florida Department of Corrections ("FDOC"), currently incarcerated at Mayo Correctional Institution Annex. He sues the following defendants: Warden C. Maiorana, Chief of Security K. Carter, Sergeant D. Miller, Officer T. Hudson, Officer Slawson, and GEO Group, Inc.[1]  Plaintiff's claims arise out of an alleged excessive use of force incident occurring at Blackwater River Correctional Facility on April 25, 2019 and involving Officers Hudson and Miller.  ECF Doc. 1.

Plaintiff alleges that Officer Hudson unnecessarily sprayed him with pepper spray, pinned his arms back and fell forward, causing Plaintiff to fall unprotected on his forehead.  ECF Doc. 1 at 6-7.  He also alleges Hudson and Miller later slammed his forehead and face, bent back his fingers and poked his eyes.  *Id.*  According to Plaintiff, Hudson and Miller used excessive force against him in retaliation for Plaintiff's objection to a mealtime-tray rule sought to be imposed by Hudson. Additionally, Plaintiff alleges that Officer Slawson failed to intervene to stop the use of excessive force; that the Warden and Chief of Security Carter contributed to the violation of Plaintiff's rights by failing to curb an ongoing pattern of physical abuse

---

[1] GEO. Group, Inc. is a private entity which is contracted with the FDOC to manage the Blackwater River facility.

of inmates by Hudson and Miller; and that GEO Group failed to properly train and educate security staff on proper handlings of disruptive inmates.

For relief, Plaintiff requests a declaratory judgment that Defendants violated his First and Eighth Amendment rights and $130,000 from each defendant for physical pain and permanent scarring and $20,000 from each defendant for emotional pain plus an additional $200,000 against Hudson and Miller.

## II. DISCUSSION

Defendants move to dismiss Plaintiff's claims on the grounds of failure to exhaust. Defendants also move to dismissal for failure to state a claim as to Slawson, Carter, and the Warden. Because the undersigned finds exhaustion to be dispositive, the undersigned finds it unnecessary to address that argument.

### A. Exhaustion Under the Prison Litigation Reform Act ("PLRA")

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."

*Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both.  *See Booth*, 532 U.S. at 734, 741.  The requirement is not subject to waiver by a court or futility or inadequacy exceptions.  *See id.* at 741 n. 6.

Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits.  *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006); *see also id.* at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.").  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record."  *Jones v. Bock*, 549 U.S. 199, 204 (2007).

Additionally, a plaintiff must exhaust his available administrative remedies as to *each claim* set forth in his complaint.  *See Martinez v. Minnis*, 257 F. App'x 261, 265 n. 5 (11th Cir 2007) (finding prisoner who filed grievance concerning numerous claims failed to exhaust a retaliation claim because grievance "did not mention retaliation or use any words synonymous with or indicating retaliation, nor did it provide the BOP with notice of allegedly retaliatory action or the opportunity to

correct it"). A court must dismiss an action if it is satisfied that an inmate failed to properly exhaust his available administrative remedies before filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

The defense of failure to exhaust should be treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two (2) steps. *See Turner*, 541 F.3d at 1082. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. (citing *Bryant*, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make

specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

The grievance procedure that must be followed is determined by the agency – here, the FDOC. *See Jones*, 549 U.S. at 218. The FDOC's grievance procedures generally require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).[2] Plaintiff agrees, in his response, that these are the procedures he must follow to fully exhaust his claims. ECF Doc. 24 at 2.

**B.  The Grievances**

It is undisputed that the day after the use of force incident, April 26, 2019, Plaintiff filed an informal grievance (No.: 185-1904-0245) complaining about the

---

[2] For complaints regarding medical treatment, which are not involved here, an inmate may bypass the informal grievance step. *See* Fla. Admin. Code r. 33-103.005(1).

use of force incident by Hudson and Miller (the "April 2019 Informal Grievance"). ECF Doc. 13-2, 24-2, 1-at 26. This grievance is attached to Plaintiff's complaint as well as the motion and response. *See id.* The allegations regarding the use of force incident in the April 2019 Informal Grievance are the same as those alleged in Plaintiff's complaint. Thus, there is no dispute that Plaintiff met the first step of the 3-step FDOC procedure for exhausting his administrative remedies. The April 2019 Informal Grievance was denied on May 10, 2019. *See id.*

It is also undisputed that Plaintiff filed a formal grievance to the Warden (No: 1905-185-091), on May 24, 2019 (the "May 24 Formal Grievance"), which was denied on June 12, 2009. ECF Doc. 24 at 2. Like the informal grievance, the May 24 Formal Grievance also complained about the use of force incident and contained allegations similar to those in Plaintiff's complaint. *Id.* Additionally, both the informal and formal grievances sought a full investigation of the use of force incident involving Hudson and Miller, photographs be taken of Plaintiff's injuries, and drug testing of Hudson and Miller. The grievances did not seek monetary relief or medical treatment. The May 24 Formal Grievance added the request that Hudson and Miller be suspended without pay for a month. Thus, there is no dispute that Plaintiff met the second step of the 3-step FDOC procedure.

Before receiving a response to the April 26 Informal Grievance, Plaintiff filed two Requests for Administrative Appeal to the Warden (both dated May 7, 2019 and

stamped "as received" on May 9, 2019) challenging guilty verdicts he received on disciplinary reports ("DRs") flowing from the use of force incident.

In one Request, number 1905-1850-033, Plaintiff stated that "Inmate Appeals Herein DR Log #185-190600 to the Institutional Level Seeking Relief." In this request, White alleged various procedural deficiencies with the DR and stated, "Grievant prays this Report is overturn[ed]." ECF Doc. 13-5. This request was denied on May 15, 2019. In the other Request, number 1905-185-032, Plaintiff referenced "Inmate Appeals Herein Log #185-190619 to the Institutional Level for Relief of Guilty Verdict by Teams Decision on 5/7/2019." As for relief, Plaintiff stated, "Inmate prays this log #185-190619 be removed, overturned, expunged from Inmate record." *Id.* at 1. This request was denied on May 22, 2019. *Id.* at 3.

On May 23, 2019, after the last Request for Administrative Appeal of his DRs had been denied and *before* Plaintiff filed the May 24 Formal Grievance with the Warden, Plaintiff filed his first and only appeal to the Secretary. It is clear from the timing and content of the appeal that Plaintiff was appealing the denial of the Requests. Specifically, the appeal began with the following statement:

> This request for central office remedy appeals the attached formal disciplinary appeal, log #1905-185-033 as well as log #1905-185-032. Please note that this appeal should consolidate the attached formal grievances as the both regard the disciplinary report log #185-190600. I reallege and incorporate the facts and matters set forth in the attached, and without adding any new grounds state the following in form of comment thereon

ECF Doc. 13-6 (Request for Administrative Remedy or Appeal number 19-6-24005). As to relief, the May 23, 2019 appeal sought only this: "This 'DR' should be removed from my file." *Id.* at 1. The Secretary denied the appeal on June 27, 2019. *Id.* at 2.

Thus, as argued by the Defendants, Plaintiff did not exhaust his administrative remedies as to the excessive force incident, because he did not complete his grievances procedures. Namely, he did not complete step 3, which required him to file an appeal of the denial of the May 24, 2019 Formal Grievance to the Secretary. As stated above, the May 24 Formal Grievance was denied on June 12, 2019. In the denial, prison officials advised Plaintiff that he could seek further review by completing Form DC1-303, providing the attachments required by Chapter 33-103.007, and forwarding the information to the Bureau of Policy Management. ECF Doc. 13-3. However, Plaintiff did not file anything with the Secretary *after* June 12, 2019. Moreover, there is no dispute that there is no appeal to the Secretary which specifically listed by number that he was appealing Informal Grievance 185-1904-0245 or Formal Grievance 1905-185-091.[3]

---

[3] In Plaintiff's response, ECF Doc. 24, he does not dispute that the grievances, requests and appeal discussed herein constitute all grievances and appeals connected with the April 25, 2019 incident. *See also* Affidavit of Blackwater Correctional Facility's Grievance Coordinator, ECF Doc. 13-1 at ¶ 6 ("[o]ther than those grievances and appeals listed above, Inmate White did not file any others connected to the events of April 25, 2019").

Case No. 3:20cv3582-MCR-HTC

Plaintiff argues nonetheless that he "submitted a formal grievance of a sensitive nature and emergency to the Secretary of F.D.O.C. on May 23rd, 2019" that consolidated all his claims together for appeal to the Secretary. ECF Doc. 24 at 3. In other words, Plaintiff wants the Court to find that the May 23, 2019 appeal to the Secretary was an appeal of not just the DRs but also of the excessive force incident.[4] In this regard, he argues the following:

> Plaintiff had attempted to advise the prison officials that [the May 23, 2019 grievance to the Secretary] was both addressing or consolidating the incident at hand. . . . Plaintiff was intending to refer to both the informal grievance and the formal grievance outlined in Exhibit #2. It should also be noted, Plaintiff had utilized the word [consolidate] to express his attempt at merging both the issues outlined in the disciplinary reports, and the informal and formal grievances of which regarded the same event.

ECF Doc. 24 at 4.

The undersigned, however, cannot reach such a conclusion as it would result in a strained and unreasonable interpretation of the appeal. Under the second step of the *Turner* analysis, the undersigned finds that it is clear from the appeal that it related *only* to the DRs. First, the appeal could not have been for the use of force

---

[4] Plaintiff also appears to suggest that his May 7 Requests should be treated as emergency formal grievances. ECF Doc. 6 at 33 ("Plaintiff had submitted an informal grievance as well as two formal grievances). Emergency grievances, if proper, may be filed directly with the warden's office or with the Office of the Secretary. Fla. Admin. Code. 33-103.006(3)(a). Plaintiff's May 7 Requests, however, were not of an emergency nature and, even if they were, they still failed to grieve or seek relief for the use of force incident.

Case No. 3:20cv3582-MCR-HTC

grievances because the appeal was filed *before* the Formal Grievance was even denied.

Second, the content of the May 23 appeal belies Plaintiff's argument. Although White used the word "consolidate" in the appeal, it was used in reference to Plaintiff's desire to consolidate his May 7 Requests on the DRs. Nowhere in the appeal does Plaintiff mention the Informal or Formal grievances. Notably, Plaintiff stated that "[t]his request for central office remedy appeals the attached formal disciplinary appeal, log #1905-185-033 as well as log #1905-185-032." ECF Doc. 13-6. Also, Plaintiff wrote, "Please note that this appeal should consolidate the attached formal grievances as they both regard the *disciplinary report* log #185-190600." (emphasis added). Additionally, as stated above, the sole relief sought was that "This 'DR' should be removed from my file." ECF Doc. 13-6 at 1.

Plaintiff also argues that even if he technically committed "an administrative grievance misstep," his efforts put the Secretary on notice of his request for relief for his injuries. ECF Doc. 24 at 3-4. The undersigned disagrees.

The purpose of the PLRA's exhaustion requirement is to put administrative officials on notice of the issues in dispute so that they may address those issues prior to court intervention. Although the FDOC regulations do not require a specific level of detail be included in grievances, the problem with Plaintiff's May 23 appeal is not the lack of detail. *See Harvard v. Inch*, 411 F.Supp.3d 1220, 1244 (N.D. Fla. 2019)

(holding that FDOC regulations do not "require that an inmate provide all relevant information available to him") (citing *Goldsmith v. White*, 357 F. Supp.2d 1336, 1339 (N.D. Fla. 2005)).  Instead, the deficiency is that Plaintiff did not appeal the denial of his May 24 Formal Grievance on the use of force incident *at all*.  Thus, he did not provide sufficient notice to prison officials because, by all appearances, Plaintiff had abandoned his request for relief regarding his injuries.

As noted in *Harvard,* the grievance must alert prison officials of "the nature of the wrong for which redress is sought."  White's May 23 appeal to the Secretary alerted the Secretary only that White sought redress for faulty DRs; it did not alert the Secretary that White also sought redress for the physical and emotional injuries he suffered as a result of the incident itself.  Therefore, White has not exhausted his administrative remedies for those physical and emotional injuries and cannot now bring those claims in federal court.

## III.   CONCLUSION

Accordingly, it is RECOMMENDED that:

1. Defendants' Motions to Dismiss (ECF Docs. 13 & 20) be GRANTED.

2. The Complaint (ECF Doc. 1) be DISMISSED WITH PREJUDICE for failure to exhaust administrative remedies.

3.  That the clerk be directed to close the file.

Done in Pensacola, Florida this 24th day of August, 2020.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.